# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER MIGUEL MELENDEZ, | **1:13-cv-00691 GSA** |
| Plaintiff, | |
| v. | |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| Defendant. | |

## INTRODUCTION

Plaintiff Javier Miguel Melendez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Supplemental Security Income payments under Title XVI of the Social Security Act. The matter is pending before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 & 10.

1

1

**THE ADMINISTRATIVE PROCEEDING**

2

### A. Background and Summary of the ALJ's Decision

3

On May 26, 2010, Plaintiff filed an application for supplemental security income under

4

Title XVI of the Social Security Act, alleging disability beginning February 27, 2010.

5

Administrative Record ("AR") 9.  On April 4, 2012 an administrative law judge ("ALJ")

6

conducted a hearing on Plaintiff's claim.  AR 9.  In a written decision issued on April 17, 2012,

7

the ALJ determined that Plaintiff was not disabled.  AR 17.  Specifically, the ALJ found: (1)

8

Plaintiff suffered from the following severe impairments: erythromelalgia, bipolar disorder, and a

9

history of polysubstance dependence; (2) Plaintiff's impairments, considered singly or in

10

combination, did not meet or medically equal the severity of one of the  listed impairments in 20

11

C.F.R. Part 404, Subpart P, Appendix 1; (3)  Plaintiff retained the residual functional capacity

12

("RFC") to perform medium work as defined in 20 C.F.R. 416.967(c), with the limitations that he

13

needed to avoid concentrated exposure to extreme heat and extreme cold and could perform only

14

simple, repetitive tasks; (4) Plaintiff had no past relevant work; and (5) Plaintiff's age, education,

15

work experience, and residual functional capacity allowed him to perform jobs that exist in

16

significant numbers in the national economy.  AR 11-16.

17

On March 13, 2013, the Appeals Council denied Plaintiff's request for review, making the

18

ALJ's decision the Commissioner's final decision.  AR 1.  Plaintiff then commenced this action

19

in District Court.

20

**STANDARD OF REVIEW**

21

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

22

whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards.

23

*See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Andrews v. Shalala*, 53

24

F.3d 1035, 1039 (9th Cir. 1995).

25

26

27

28

1   "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas*

2   *v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the

3   record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  In

4   applying the substantial evidence test, courts review the record as a whole.  *Lamb v. Mathews*,

5   546 F.2d 814, 818 n. 6 (9th Cir. 1976).  Where the evidence is susceptible to more than one

6   rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

7   upheld." *Id*.

8

9                                    **DISCUSSION**

10   **A.  Issue Presented for Review**

11       Plaintiff alleged disability due to erythromelalgia,[3] swelling in hands and feet, bipolar

12   disorder, and chronic pain.  Plaintiff testified about his impairments, and the pain he experienced

13   as a result of these impairments, at the administrate hearing conducted by the ALJ.  In the instant

14   appeal Plaintiff argues that the ALJ did not provide legally sufficient reasons for rejecting his

15   testimony.

16

17   **B.  Applicable Law**

18       In evaluating the credibility of a claimant's testimony regarding subjective complaints of

19   pain and other symptoms, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572

20   F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented

21   objective medical evidence of an underlying impairment that could reasonably be expected to

22   produce the pain or other symptoms alleged.  *Id*.  The claimant is not required to show that the

23   impairment "could reasonably be expected to cause the severity of the symptom she has alleged;

24   she need only show that it could reasonably have caused some degree of the symptom." *Id*.  If the

25   claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

---

[3] Erythromelalgia is a genetic skin disease, which causes episodes of pain, redness and swelling in various parts of the body, particularly the hands and feet.

3

claimant's testimony regarding the severity of the symptoms if she gives "specific, clear and

convincing reasons" for the rejection. *Id*.

> Regarding credibility determinations by an ALJ, the Ninth Circuit has held as follows:

> The ALJ may consider many factors in weighing a claimant's credibility, including
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
> for lying, prior inconsistent statements concerning the symptoms, and other
> testimony by the claimant that appears less than candid; (2) unexplained or
> inadequately explained failure to seek treatment or to follow a prescribed course of
> treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported
> by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.2008) (citations and internal quotation marks

omitted); *see also Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226–27 (9th Cir. 2009);

20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, available at 1996 WL

374186.  Other factors the ALJ may consider include a claimant's work record and testimony

from physicians and third parties concerning the nature, severity, and effect of the symptoms of

which he complains.  *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997).

### C.  Summary of Plaintiff's Testimony

At the time of his administrative hearing on April 4, 2012, Plaintiff was 43 years old.  He

testified that he was 5 feet 8 inches tall and weighed 200 pounds.  AR 26.

Regarding his work history, Plaintiff stated that in recent years he had run a home-based

business with his wife, taking care of elderly adults who lived in their home.  Plaintiff testified

that he "just pretty much stayed at the house and kept an eye" on "four elderly males staying at

the house."  AR 27.  When asked to explain what the care-taker work entailed, Plaintiff

responded: "Well, I didn't really care for them, I was just a body there."  AR 51.  He added: "[I

was] just a body there for when my wife needed to take off or whatever" because "they're not

allowed to be alone."  AR 51.  Plaintiff added, "I never did anything, I was just there with the

guys, you know."  AR 51.

The ALJ noted that Plaintiff's records only showed earnings from that business in 2010, despite the fact that Plaintiff worked in the business for several years.  AR 26.  When the ALJ asked Plaintiff to explain why Plaintiff's records reflected earnings only for 2010, Plaintiff replied that he did not know because his wife "did all the paperwork."  AR 27.  Plaintiff noted that he and his wife were going through a divorce since 2010.  The ALJ then asked whether, given the pending divorce, his wife had wanted to show income for him in 2010 but not before.  Plaintiff responded that he "had no idea."  AR 27.

Regarding his impairments, symptoms, and limitations, Plaintiff testified that he experienced back pain; heat in his arms and legs from the erythromelalgia he has had from birth; anger and mood swings.  AR 30; 33; 34.  Plaintiff testified that he sees a psychiatrist for a bipolar condition and has been prescribed Zoloft, Gabitril and Depakote.  Plaintiff testified that his medications cause anger, insomnia, and also make him see shadows.  AR 34; 45.

Plaintiff testified that he has pain all over his body, all the time.  The pain is in the form of burning heat as a result of his erythromelalgia.  AR 39.  Plaintiff testified that wearing clothing makes him uncomfortable because it makes him feel hotter.  AR 39-41.  Plaintiff explained that he deals with his pain by soaking in water.  AR 41.  Plaintiff stated that he soaks his hands and feet in water every 15-20 minutes during the daylight hours.  AR 42.  He stated that on a good day he "can probably go about half hour" before he has to soak his hands and feet.  AR 42.  He specified that he soaks his legs from the knee down about six or seven times during the day.  AR 43.

Plaintiff testified that in general he can focus for about 10 minutes at a time on account of his pain.  AR 46.  Plaintiff testified that he can walk half a block outside his home; stand for four to five minutes at a time; and sit for one hour at a time.  AR 168.

Plaintiff stated that physicians from Stamford, Connecticut have contacted him in regard

5

1    to experimental treatments.  AR 48.  Plaintiff added: "But I've refused to go down there now

2    because of the legal things that I'm going through right now, as far as divorce, I can't take off

3    right now because of the court dates that I have, but I would like to go."  AR 49.

4        **D.  Analysis**

5        In this case, the ALJ found that Plaintiff's medically determinable impairments could

6    reasonably be expected to produce the alleged symptoms.  AR 15.  However, the ALJ further

7    determined that Plaintiff's statements about the intensity, persistence, and limiting effects of those

8    symptoms were not credible to the extent they were inconsistent with his assessment of Plaintiff's

9    residual functional capacity.  AR 15.  Specifically, the ALJ found that while the Plaintiff "was not

10   at all times symptom-free, the evidence does not support the degree of limitation he alleges."  AR

11   16.  Absent affirmative evidence of malingering, the ALJ was required to provide clear and

12   convincing reasons for discounting Plaintiff's subjective symptom testimony.  As discussed

13   below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to

14   discount Plaintiff's credibility.

15       First the ALJ found that the objective medical evidence in the record did not support

16   Plaintiff's subjective complaints.  Specifically, the ALJ noted as follows: "[The Plaintiff's] own

17   statements, and those of third parties concerning his impairments and their impact on his ability to

18   work, are not credible in light of discrepancies between [Plaintiff's] assertions and information in

19   the documentary reports and the reports of the treating and examining practitioners."  AR 16.

20   Although an ALJ may not rely solely on the inconsistency between objective findings and a

21   claimant's subjective claims in order to reject the latter, *Light*, 119 F.3d at 792, an ALJ may

22   properly consider such an inconsistency as one factor among others in making his credibility

23   determination.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc.*

24   *Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

6

With regard to Plaintiff's physical impairments, the ALJ noted that the consultative examiner, Dr. Rustom F. Damania, M.D., found that Plaintiff's skin appeared normal upon examination and that Plaintiff had 5/5 strength in all extremities.  AR 14.  Dr. Damania concluded that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk without restriction, and sit without restriction.  AR 14.  He had to work in a temperature-controlled environment, and could not tolerate too much heat or too much cold.  AR 14.  The ALJ further observed that state-agency medical consultant J. Bonner, M.D., had noted that Plaintiff had no exertional limitations, although he was advised to avoid concentrated exposure to extreme cold and extreme heat.[4]  AR 14.

With regard to Plaintiffs mental impairment, the ALJ referenced the findings of Ekriam Michiel, MD, a psychiatric consultative examiner, who noted that Plaintiff's attention, concentration, judgment/insight and immediate recall were fairly intact.  AR 14.  Dr. Michiel found that Plaintiff could maintain attention and concentration to carry out simple job instructions, and relate to and interact with co-workers, supervisors, and the public.  AR 14-15.  The ALJ further noted that state-agency psychological consultant, K. Loomis, MD, concluded upon a review of Plaintiff's file, that Plaintiff could understand and remember simple work tasks; sustain concentration, persistence and pace; and adapt to changes in the workplace.  AR 15.  Dr. Loomis described Plaintiff's social interaction as appropriate.  Finally, the ALJ noted that Kim Morris, Psy.D., also adopted Dr. Loomis' findings.[5]  AR 15.

The ALJ properly summarized the opinions of the consultative examiners and state-agency reviewing doctors, and correctly noted that their opinions do not support Plaintiff's description of the severity of his impairments and their impact on his ability to work.  The ALJ

---

[4] Dr. Bonner also noted that Plaintiff's "[d]egree of subjective complaints and limitations is not adequately supported by MER [medical evidence of record]."  AR 297.
[5] Dr. Loomis also noted that Plaintiff's "allegations are not fully supported by the objective findings in file."  AR 324.

1
2
3
4
5
6
7

also discounted the third-party statements of Plaintiff's wife regarding the severity of Plaintiff's impairments because he found that these also were not consistent with the opinions and observations of medical doctors in the record and likely reflected Plaintiff's "symptomatological exaggerations." AR 16.  The ALJ's analysis of the inconsistency between Plaintiff's subjective complaints and the objective medical evidence constitutes a specific, clear and convincing reason, supported by the record as a whole, for his adverse credibility determination.[6]

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Next, the ALJ found that Plaintiff's "demeanor while testifying at the hearing was generally unpersuasive." AR 16.  The ALJ noted that that Plaintiff's demeanor was not a determinative factor but rather was one factor of many that he relied on in assessing Plaintiff's credibility. AR 16.  The ALJ properly relied on Plaintiff's demeanor as a basis for discounting his testimony regarding the severity of his symptoms and their limiting effects. *See, e.g., Fanale v. Astrue*, 322 F. App'x 566, 567 (9th Cir. 2009) (claimant's demeanor at hearing amounted to clear and convincing reason for discrediting her subjective complaints); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (holding that district court properly affirmed the ALJ where ALJ's credibility finding was based on claimant's daily activities, "his demeanor and appearance at the hearing" as well as his well-documented motivation to obtain social security benefits"); *DeMaio v. Astrue*, 2011 WL 837180 at *12 (E.D. Cal. Mar. 7, 2011) ("This Court will not dispute the subjective credibility assessment of the ALJ, who was present to watch and listen to the testimony first hand.").

23
24
25
26
27

The ALJ further noted that Plaintiff's credibility regarding the severity and impact of his impairments was undermined by the fact that he was experiencing non-medical problems in his life, such as financial stress and a separation/divorce, suggesting that "at least some of his difficulties are situational, and not medical, in nature." AR 15 (citing Exhibit 1F15, AR 224-

28

[6] The records of Plaintiff's treating doctors also do not support Plaintiff's description of his limitations.  Indeed no treating doctor assessed any functional limitations on account of Plaintiff's impairments.

8

225).  The ALJ's reasoning was specific, clear and convincing and supported by substantial

evidence in the record.  *See, e.g., De Maio*, 2011 WL 837180 at \*12 (the fact that Plaintiff was

going through a divorce and was experiencing related financial difficulties was relevant to the

ALJ's evaluation of the credibility of her subjective symptom testimony); *Chee v. Shalala*, 1994

WL 721447 (N.D. Cal. Dec. 28, 1994) (ALJ properly discounted claimant's subjective symptom

testimony where claimant testified to a "very bitter divorce" and "expensive custody fight" which

the ALJ found corresponded closely with her disability onset date, suggesting non-medical

reasons for her motivation to seek disability benefits).  Here, the ALJ referenced evidence in

Plaintiff's records that revealed that Plaintiff, who was dependent on his wife's family financially,

was in the midst of a marital conflict, had lost his source of income, and was losing his home on

account of financial difficulties.  AR 224-225; *also see* AR 211.

The ALJ next noted that Plaintiff's work history was also inconsistent with his testimony

regarding his symptoms and limitations.  AR 15.  Specifically, the ALJ noted as follows:

> The record reflects some evidence of work after the alleged [disability] onset date
> [of February 27, 2010].  On May 7, 2010, Mr. Melendez reported that he worked
> for his mother-in-law and was paid under the table. (Exhibit 1F2 [AR 211]).
> Although that work did not constitute disqualifying "substantial gainful activity,"
> neither is it consistent with his subjective complaints.  He was working as a
> caregiver, an occupation requiring considerable physical and mental activity.

AR 15.  The Court finds the ALJ's reasoning to be sound.  Plaintiff testified at the

administrative hearing that his wife and he operated a home business caring for elderly

males.  Plaintiff testified that he had no idea why his earnings from that business were not

reflected in his earnings records.  Plaintiff further testified that he basically just "kept an

eye on" the elderly males and did not do much else.  However, Plaintiff's testimony is at

odds with earlier statements, included in the record, that the ALJ relied on in making his

credibility determination.  The records cited by the ALJ reflect Plaintiff's statements to

Dr. Joseph Bonilla as follows:

1
2
3
4

> [Plaintiff] reports currently he is experiencing a lot of stress in his life.  His wife wants a divorce . . . they are selling their house which he really liked, they are living with her mom, he is trying to get an apartment which is not going well and appealing disability … [His wife] will not help him financially and will not give him what he deserves in the settlement.  They both work for her mom who owns several board and care homes although he is paid "under the table."

5

AR 211.  Plaintiff's statements to Dr. Bonilla suggest that he was helping his mother-in-

6

law at several "board and care" homes after his alleged disability date, and was paid under

7

the table.  The ALJ's observation that this evidence of work in the record is not consistent

8
9

with Plaintiff's subjective complaints counts as a specific, clear and convincing reason for

10

discounting Plaintiff's testimony.  *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th

11

Cir. 1997) (a claimant's work record is a relevant factor in evaluating the credibility of his

12

subjective complaints).

13

    The ALJ also relied on Plaintiff's description of his daily activities in discounting

14

Plaintiff's subjective complaints of disabling symptoms.  AR 15.  The fact that Plaintiff

15
16

stated that he goes outside two or three times per day and takes care of pet fish does not

17

necessarily undercut his subjective complaints.  AR 175; 176.  Indeed to the extent

18

Plaintiff stated he goes outside for the purpose of cooling off with a garden hose, this

19

testimony supports his subjective complaints.  AR 175.  However, Plaintiff also testified

20

that he goes shopping for food and clothing weekly and manages his finances.  These

21

activities may be seen as inconsistent with his assertions of totally disabling symptoms.

22
23

For example, Plaintiff testified that on account of his symptoms from erythromelalgia, he

24

soaks his hands and feet in water every 15-20 minutes during the daylight hours.  AR 42.

25

He stated that on a good day he "can probably go about half hour" before he has to soak

26

his hands and feet.  AR 42.  Plaintiff also stated that he could only stand for a few minutes

27

at a time, and, as to his ability to concentrate, he testified that in general he can focus for

28

about 10 minutes at a time.  AR 46.  This testimony may be viewed as inconsistent with

Plaintiff going shopping and being able to manage his finances.  The ALJ's reliance on

this inconsistency is supported by substantial evidence and the Court may not second-

guess the ALJ's determination.  *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

2002) (claimant's "ability to perform various household chores such as cooking, laundry,

washing dishes and shopping," among other factors, bolstered "the ALJ's negative

conclusions about [her] veracity"); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)

("[e]ven where [the daily] activities suggest some difficulty functioning, they may be

grounds for discrediting the claimant's testimony to the extent that they contradict claims

of a totally debilitating impairment"); *Orn v. Astrue*, 495 F.3d 625, 639 (2007) (claimant's

daily activities that contradict claimant's other testimony vitiate claimant's credibility).

In sum, the ALJ cited specific, clear and convincing reasons, based on permissible

grounds and supported by the record as a whole, for rejecting Plaintiff's subjective complaints

regarding the intensity, duration, and limiting effects of his symptoms.[7]  *See Batson v. Comm'r of*

*Soc. Sec. Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004); *Thomas v. Barnhart,* 278 F.3d 947,

959 (9th Cir. 2002).  As such the ALJ's credibility determination is proper.

### CONCLUSION

The Court finds that the ALJ's decision is free of legal error and is supported by

substantial evidence in the record as whole.  Accordingly, this Court DENIES Plaintiff's appeal

from the administrative decision of the Acting Commissioner of Social Security.  The Clerk of

---

[7] The Court is not persuaded by two additional reasons that the ALJ provided for discounting Plaintiff's testimony regarding his subjective complaints, namely that Plaintiff's responded well to medications for his mental impairment and that he continued to smoke despite direct medical advice. AR 15.  Neither of these reasons relate to Plaintiff's testimony regarding his symptoms from erythromelalgia, which he characterizes as his chief complaint. *See* Doc. 14 at 8.  While these two reasons for discounting Plaintiff's credibility may have some merit, they do not amount to a clear and convincing basis for rejecting Plaintiff's subjective complaints.  Nonetheless, the ALJ cited a number of specific, clear and convincing reasons for discounting Plaintiff's subjective complaints, and his credibility determination is therefore proper. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008) (the inclusion of improper reasons does not negate an overall adverse credibility determination); *Kibble v. Comm'r Soc. Sec. Admin.*, 2014 WL 4290790 at *1 (9th Cir. Sept. 2, 2014).

1   this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, the Acting

2   Commissioner of Social Security, and against Plaintiff Javier Melendez.

3

4
    IT IS SO ORDERED.
5

6        Dated:   __September 19, 2014__              _____/s/ Gary S. Austin_____
                                                      UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                  12